Good morning, Your Honors. If it may please the Court, my name is Alan Beck. I'm counsel for the Appointee to the Appellant, George Young, and I would like to reserve five minutes for rebuttal. Please watch your clock. Yes, Your Honor. The matter before this Court is my client's challenge to Hawaii's firearms prohibition, carry prohibition, outside the home and the carry and in the home possessions of tasers and switchblades. This case is highly distinguishable from the Pruda case because in Pruda, this Court simply found that there was no freestanding right to concealed carry. Here, my client both applied and asked for in his prayer for relief, very specifically, a permit to either carry openly or concealed. Thus, this Court is not bound by Pruda. Here, the HRS operates as a complete ban on the carry of firearms, both concealed or openly. They have some exceptions though, right? For concealed carry, Your Honor, it is completely banned for private citizens, although there are exemptions for security and armored truck drivers. As for the carry of concealed weapons, there are absolutely no, as a policy, the Chief of Police simply does not issue. So the statute says exceptional circumstances. That's correct, Your Honor. For concealed and for open, it's if you're in the business, is that correct? That's correct, Your Honor. However, as we submitted by a motion of judicial notice, the state simply has not issued a concealed carries permit at least for 20 years. And in the study, it was at AG's publication, they conceded that there were simply zero permits within the state. And there was an additional letter where a member of the police chief in the Big Island said that they had not issued a permit in 20 years and they were fairly, they didn't have records for prior to that and they were fairly sure that they had not. What is in the record about failure to issue any permit over 20 years? I know there was a suggestion to take judicial notice, but is there anything else that would establish the 20-year period? No, Your Honor. Again, my client, this is a Rule 12 motion, and my client was pro se at the lower court. However, what he did allege is that the Chief Police has complete and utter unbridled discretion to issue. That's true. He could issue if he wanted to. He just simply does not. But I'm trying to establish, is there a record to show that no permit has been issued? The record does not demonstrate that. It's simply what's in the motion for judicial notice that indicates that, Your Honor. Additionally, we submitted by 28J a GAO study that demonstrates that in 2012 there were no permits in the state of Hawaii. So, the Second Amendment right extends outside the home. So that question was left open in Peruta, expressly left open. Yes, Your Honor. And so, what's the basis for saying that it Every court in the nation to ever expressly rule on this issue at the state Supreme Court level and the circuit court level has either assumed or expressly found that the Second Amendment right applies to armed self-defense. Most recently, in the D.C. Court of Appeals case in Wren, and as the court's aware in Moore v. Madigan. I believe this case is actually much more analogous to Moore v. Madigan than it is to the Wren case. Because here, first by statute and by the county's policy of not issuing permits, it's more in line of a complete ban. And also the ban that was found in Palmer. And most recently, and again this was post-Peruta in our circuit, the Murphy v. Guerrero, which was submitted to this court by 28J, that's where the Northern Marinas Islands, I believe it was an Article 4 court, found that their complete ban on open carry was unconstitutional. So here our challenge is very similar to the one that was made in Murphy. Here my client simply wants to carry, have some mechanism to carry outside the home. And the state of Hawaii just simply does not give him any meaningful procedure to actually carry outside the home. Now it's a bit of a misnomer to say that there is a true exceptional case criteria, because there simply is no criteria. The chief simply just, and that's the state, that's what the state statute says, but the actual implementation is one where there's no actual criteria for what is an exceptional circumstance. And there is really no reason to have one, because they simply do not issue. So if we agreed with you that the Second Amendment extends to handguns outside of the home, how would we, under what tier standard of scrutiny, would we review this statute? Now while this court has overturned the original three-panel decision in Pruita, I still believe that for issues that this court did not expressly overrule in the authority, while not precedent. And so what we would argue is that because it's simply a complete ban outside the home, that this court should apply a categorical approach in reviewing. I mean, we've got decisions that say that we should use the two-step approach. I agree with you, your honor. So how can we disregard those decisions? Because the two-step approach first finds that you apply, you look to whether there's a right, and again, the original three-panel Pruita decision, correct me if I'm wrong, I believe it was post-Joven, which is what set up that two tiers. It was, but the Anbanca opinion didn't differ on that. I mean, the Anbanca opinion also proposed using a two-step approach. And we did after Joven and Jackson, and Sylvester too, I think. So let's assume that intermediate scrutiny applies, although I still stand by the position a categorical approach applies. Even under intermediate scrutiny, this court should find that it's unconstitutional because under Jackson v. San Francisco, the court found there that to alternatives to, for self-defense. And that was a case where this court was reviewing the, a ban on the sale and not the ownership of Hall Point ammunition. It found there's other ammunition types that are available. Thus, there was a reasonable alternative to, to engage in armed self-defense. And again, they, after, in FIOC, this court also found the same. There was a reasonable alternative to, for armed self-defense using magazines that were underneath the threshold. Here, that's not the case. There is simply no reasonable mechanism for my client to engage in self-defense outside the home. But what tells us that the core of the I mean, there are decisions, several decisions that are willing to assume the Second Amendment has some reach outside the home, but have pointed to the language in Heller to say that the core of the Second Amendment is self-defense within, to protect Hearth and Home, or what the phrase was. And so that doesn't necessarily require a conclusion that you have to be allowed to carry a handgun outside the home in order to accomplish a reasonable fit with the objectives of, of the state regulation of the Second Amendment. Well, it does, per this court's precedent in Jackson, where if something's within the scope of the Second Amendment right, here outside the home, you apply intermediate scrutiny. And it's, I read Jackson to say that he don't actually engage in whether there's an important government interest. The court in determined that how you apply that is to determine whether there are reasonable alternatives to armed self-defense outside the home, or I'm sorry, in the, according to the law that's being evaluated. And if there are no reasonable alternatives, then that fails intermediate scrutiny rather than engaging in self-defense. One of my colleagues knows Jackson a whole lot better than I do, but I haven't seen anything in that that says that this is a requirement to satisfy intermediate scrutiny. Excuse me. It may well be that intermediate scrutiny was satisfied in that case because there was an alternative, but that's not the same as saying, if you don't have an alternative, you can't satisfy intermediate scrutiny. And if you could point me to something in Jackson that states the proposition you're stating, I'd be interested in it, but I haven't seen it yet. It is in, I cite that within the supplemental brief, the post-pruritus supplemental brief that was filed. Obviously, I defer to Judge Ikoudis, she wrote the opinion, but my reading of Jackson is actually the former, that there simply needs to be reasonable alternatives in order to satisfy intermediate scrutiny. And again, I'm not conceding that intermediate scrutiny is the correct standard of view here. The Jackson, the issue was within the home, guns for use within the home. Absolutely, Your Honor. And I took Judge Clifton to be, again, suggesting that there may not be the same protection from the Second Amendment for use outside the home. Well, there may not be. However, that would suggest, though, that say, if it had been a complete ban on the possession, say, of an arm, then you apply strict scrutiny within the home. Whereas, if there are places, let's say sensitive places, there you apply intermediate scrutiny to these locations outside the home. However, I don't think sensitive places... But as to the right itself, but as to the right itself to self-defense, there is no case that is specifically held that that is not available outside the home. Is that correct? That's absolutely correct. There's no circuit or state. And again, we're talking about the Supreme Court for Florida, the Supreme Court for Florida, they upheld it because it was a shall issue jurisdiction. They simply wanted open carry. But it strongly suggested that they would strike down a may issue jurisdiction. And again, the Second Circuit in Chelsea, I'm running out of time, so I'm sorry, I'm talking a little bit faster, but actually found that intermediate scrutiny applies outside the home. And Drake and Woollard both found that they assumed the right outside the home. Not a single court. I have 230 left, so I would like to use the rest of my time. That's fine. Okay, thank you very much. Aloha, good morning, your honors. Ken Horowitz, behalf of the county. HRS section 134-9 does not impose on the core of the Second Amendment, so the U.S. State's District Court was correct in there's the concealed carry part, and there's also the open carry part, address each in turn. Counsel, before you get that far, I noticed that the state of Hawaii has not made an appearance. In this case, you represent the county of Hawaii. But I assume, or may I assume, that the county endorses the brief that was filed amicus curiae by the state? Yes, your honor. So again, there's two parts to the scheme. So first, the concealed carry. Regarding that, we feel that the validity of that portion of the statute is governed directly by Peruta, which the en banc opinion held that there's, you know, it does not, I think the Second Amendment does not include any degree the right to carry concealed outside of the home or at firearms in public. So any prohibition like HRS 134-9 is necessarily allowed by the Second Amendment. Regarding the other portion, the open carry portion, the amicus briefs and our briefing establishes that our position is Heller does not extend the Second Amendment to outside of the home for public carry. For the sake of argument though, let's accept the appellant's theory that the Second Amendment does allow for open carry in public for the purpose of self-defense. Even under this formulation, we still believe that HRS section 134-9 is still not inconsistent with appellant's rights. So in the brief... What standard of scrutiny in your view do we use to analyze it, assuming that the Second Amendment protects that right to open carry outside the home? Well, as in Kuchelski and others, we feel that it would be intermediate scrutiny under those, under that formulation. So what's your response to opposing counsel's view that the categorical approach applies because it's de facto a complete ban on open carry? We feel it's not actually a complete ban. There are certain... I know there was already mentioned if you're in a certain businesses are allowed, but there's also other aspects for carrying firearms. So a reasonable, I think in Wren they're talking about the reasonable law-abiding person is completely prevented from getting at only this specific group, and Wren thought that was enough to be a complete ban. Why isn't it in this case? Well, aside from the statutory exceptions, which does allow, feel that they're simply that it's not a complete ban. There are means and mechanisms by which... No, it's not a complete ban unless you happen to be a security guard. That's about the only class of people who can get an open carry permit. Isn't that correct? Not necessarily, Your Honor. Well, what does the language of the statute otherwise mean? Well, actually, so we wanted to look at that term exceptional case and... I thought that's limited to concealed carry. Correct, Your Honor. But that's completely outside of the Second Amendment, so we're not even considering that. So looking only at the open carry portion of the statute, what other means are there for someone other than a security guard, as Judge O'Scanlan mentioned, to get a permit? If you're actively engaged in the protection of life and property. Okay, a security guard. Anybody else? Well, if we look at protection of life and property, under the formulation we were talking, under appellant's formulation, that would include one's own life, would it not? So you're saying that the statute's susceptible of an interpretation of not being a security guard, but my understanding is that the county regulations limit it not only to a security guard, but also only while that person is working. Am I misunderstanding that? That's part of the regulation, but also part of the regulation is it simply just regurgitates the statute as is. So there is part of the regulation that does allow for engaging the protection of life and property. Does the county interpret it that way so that have any permits been issued to people who were not security guards? Not to my knowledge. Is there any guidance or regulation or guidance document that interprets it the way you're saying now? Not that I have in front of me, Your Honor, no. Do we know how many permits have been issued? I don't believe any permits have been issued, Your Honor. So we should, I mean, we can accept that as sort of a given that even if that the statute and regulations might allow an argument that someone should be allowed to get a permit, they're not going to get it. That's kind of the lay of the land, isn't it? Potentially, we feel that in this specific case, though, that simply the showing wasn't made. What's showing? Well, the showing that he was engaged, under that interpretation that he was engaged in the protection of life and property. Well, that's part of the problem. In other words, unless you happen to be a security guard, you're out of luck, period. And even under the exceptional situation, you concede that no permits have ever been issued. Correct. I guess what I was getting at, Your Honor, is that in this specific case, the appellant, when he was the plaintiff, didn't make the showing that he was engaged in the protection of life and property, including his own self, so that... So could we make, so say that we interpreted the statute, we gave an authoritative interpretation of the statute that said in order for the statute to be constitutional, the chief of police must issue permits to anyone who makes a showing that they're engaged in the protection of life and property. I feel that might be extending it a little far as far as the must, but it's because it still is a may. They still have that ability to... Though we're saying that that would be what was required to be constitutional, and with that, what would be the state and county's position or the county's position on that? Well, we disagree, again, based on the fact that we don't feel that Heller extends to public carry, but if there was interpretation that Second Amendment does extend open public carry, we still feel that it would be may and not must under those... Well, I may win the lottery, the Powerball, and be worth gajillions of dollars, but should I properly plan my retirement strategy on that? I mean, we got to be realistic here. If you tell us no permits are being issued, then can we put much weight on the notion that maybe someday a permit will be issued to somebody who makes a truly compelling case, or should we view this as just this side of an absolute band? Well, I think you've hit on it right there is we haven't seen a truly compelling case yet. Well, how do we know that? We may know that Mr. Young hasn't presented evidence that he presented a compelling case, but I got to be honest, if over a period of years, nobody gets a permit, hard to say that there isn't somebody who might have made a case if this really is being opened. If a door is being opened to this category, it's hard to believe that there's not somebody who hasn't tried to walk through that door. I don't have that in front of me, Your Honor, so... So let's... Typical law-abiding citizen, which is the category we're thinking about here, still has a right under the Second Amendment so long as the person is not a convicted felon or has some other disability. So when you say he didn't make an appropriate showing, all we had to do, was it not, was to establish that he didn't fit into that prohibited class. And show that he was engaged in the protection of life and property. Well, okay. You're still relying on the express limitation in the statute. The problem, of course, is if the Second Amendment only extends to security guards, then there's a real constitutional problem here. I suppose so. So let's assume that we were talking about whether there was a categorical ban, you said no, because there is a way of getting for people to obtain it, although it's very narrow. So in your view, then, what would be the proper analysis under the correct standard of scrutiny? Is it intermediate scrutiny? Is it strict scrutiny? What's your position on that? It would be intermediate scrutiny because, again, we don't feel it's a complete categorical ban, so therefore it doesn't impose directly on the court. So it would go to a public safety issue. So there's a substantial state interest in public safety, right? And then why is this appropriately tailored for that public safety? Sure, Your Honor, because it's specifically tailored to that in the sense that it is focusing on the way the licensing scheme is set up. It's a complete licensing scheme allowing for specific exceptions, for specific reasoning. And the public safety aspect, again, is that, I hate to harp on it again, the life and property protection aspect. So what do we do about the fact that there have been no permits issued? So that doesn't seem like a reasonable tailoring. That seems like just a no tailoring. What do we do about that? Sure, Your Honor, that does seem to be the sticky wicket here. Simply the fact that there were none doesn't mean that none could have been. And I don't have any other argument I can make on that point. I apologize for that part. But I suppose that the record shows that there hasn't been any granted. But again, we still feel that it doesn't matter in the sense that HRS Section 134-9 as a whole, and as part of the 134, the entire chapter as a whole, it still doesn't impose on the court of the Second Amendment itself. So if we disagree, in other words, in order for you to win, do we need to find that, in fact, the Second Amendment doesn't extend to carrying firearms outside of the home? Is that the bottom line here? It appears so. And yes, I believe so. And that would be consistent with other jurisdictions as well. By and far, most of the jurisdictions would agree that there was no right to open carry for the purposes of self-defense anyway. Well, what do you do with cases like Wren and Moore? As far as Wren- Even the other three. There's only been five cases that we care about here. Even the other three assumed open carry. Correct. Let's look at Wren, for example. That's the first one. That's the D.C. one. So actually, we can distinguish HRS 134-9 from Wren. And it goes back to that exceptional case terminology. I believe they had- That's only for concealed carry, though. And Peruta has said that's not even part of the Second Amendment. Right. Well, I guess I was just looking at the fact that the D.C. code structure, they required- the way it was implemented, there were certain comparative analysis that needed to be shown that the individuals applying for permits, whether concealed or open in this case, would be if they were applying they had to show that they had some exceptional above and beyond need as opposed to more than the rest of the general public. Whereas HRS 134-9 doesn't ask for applicants to provide that same sort of I'm in a better or worse position than the rest of the general population. So in that sense, the D.C. code is much more restrictive than HRS section 134-9 would be. Which way does that cut in terms of your argument? If it's more restrictive, isn't that a problem? No, I don't believe so, Your Honor, because it was more restrictive. So, of course, in Wren, they shot that part down. But that doesn't- That's the point. Right. But in that sense, theirs is more restrictive. Ours is much more lenient than the D.C. one. So ours wouldn't necessarily be struck down under the same logic. Are you relying on- you're saying that engaged in the protection of life and property is less restrictive than exceptional circumstances? I am. See, I'm running low on time. I guess, you know, as we've- So opposing counsel says the shoe is actually on the other foot, that no case has found that the Second Amendment does not apply outside of the home. Although there are also- and there have been several cases which have held that it does apply outside of the home. So is that incorrect? Are you aware of any cases holding that the Second Amendment does not apply to self-defense outside the home? I believe there are. But I don't have those in front of me right now. I believe they're in the briefing and then also in the amicus briefing. But I don't have those in front of me right now. I apologize for that. So we still feel that the- since it doesn't impose on the core of the Second Amendment, we don't need to go into that second step of the analysis to establish what level of scrutiny. And as a result, you know, constitutional rights weren't impacted in this sense and you can't sustain the municipal liability claim, at least against the county. We feel that the district court recognized this and we ask that their decision be affirmed. Any other questions, Your Honor? All right, thank you. Apparently not. Thank you. Okay, most importantly here, I need to direct this court to page three of the Attorney General's amicus brief, where they cite to a 1961 white journal, Attorney General's opinion, where they directly interpreted the law to not allow under any circumstances to the open carry, to open carry issuance for private citizens and expressly state within the 1961 Attorney General's opinion that this is for security and other people engaged in professional activities like that. When was 134-9 enacted? I don't know. 1988. So how does the 1960 something Attorney General opinion speak to the current statute? Because essentially the same language is my understanding and I don't have the amicus brief in front of me right now, but page three, they expressly concede that this applies simply to the open carry, that it does not apply to a private citizen open carry. And that's a session that was made by the Attorney General within their amicus brief that was filed in this case. So even assuming the language has changed, I don't believe it changed from the prior statute. That's the position of the Attorney General in this case. And I think that we need to listen to the Attorney General. With all due respect, Mr. Horowitz. I'm looking at page three and I'm struggling to find it. It's a footnote. Footnote, 1961 Hawaii Senate Journal at 874. Yes, thank you, Your Honor. Well, that's not an Attorney General opinion. Well, I mean, it's the Attorney General's, the Attorney General's side to that within their amicus brief. I assume that it was an Attorney General opinion. But I mean, my point is that they have conceded within their amicus brief that this apply, that it simply does not apply to private citizen carry under any circumstances, Your Honor. I think we need to take the Attorney General at its word. Are there any further questions? 10 seconds. Apparently not. Thank you. Okay. Thank you very much, Your Honors. We thank both sides for their helpful argument. In the case of Young v. State of Hawaii is submitted.
judges: O'scannlain, Clifton, Ikuta